## CHRISTIAN W. HOLM & wife *vs.* GEORGE LOW.

H. devised the income, rents and profits of his estate, to his wife, during the minority of his children, provided she should not marry again, and on no other condition ; but if she should marry, then his will was that she should have, in lieu of the aforesaid income, $ 100 a year, during her life, to be paid by his executors from the income of his estate, provided she should accept the same in lieu of dower : He further directed by his will, that as his children should arrive at full age, they should each receive, from the income of his estate, $ 100 annually, to be paid by his executors, if said income would, in their opinion, admit thereof without injuring his wife and minor children. Then followed this clause in the will : " It is understood, that during the time my wife enjoys the whole income of my said estate, she support and educate my children out of said income ; and further, that if by intermarriage she shall vacate her claim to the whole of said income, and become entitled, in lieu thereof, to an annuity of $ 100 for life, then the residue of the income of my said estate, during the minority of my children, shall be appropriated to their support and education, as my executors shall direct." The last devising clause was thus : " I further will and order, that upon the death of my wife, and all my children or the survivors of them attaining the age of 21 years, or the heirs of such of them as may decease, leaving issue, all my estate be divided between my said children and their heirs, agreeably to the laws of this Commonwealth respecting the division of the estates of persons dying intestate " — with a limitation over to the testator's nephews, if his children, after the death of the widow, should all die without issue.

The executors appointed by H. declined the trust, and letters of administration were

Holm & wife *v.* Low.

granted, with the will annexed: His widow refused to accept the provisions of the will, and claimed and took her dower. During her life, the son and daughter of H. (his only children, and who were minors when he died,) after they were 21 years old, made partition of all the real estate which was not set off to the widow as dower, and occupied it in severalty : The son also made a warranty deed to A., of a moiety of the reversion of the estate assigned as dower: The son and daughter both died, while the widow was alive, and the son left minor children, one of whom brought a writ of entry, after the widow's death, against A.'s grantee, and claimed title, under the will of H., to the estate thus conveyed to A.

*Held,* that the demandant was entitled to recover; that an estate for years was given to the widow, which never took effect, because she refused to take it, and claimed her dower; that the will gave to the children neither a vested nor a contingent remainder; but that, on the death of the widow, the whole estate first vested in the grandchildren, who took it by way of executory devise.

WRIT of entry to recover one undivided fourth part of a parcel of land in Hanover Street, Boston. The demandants declared on their own seizin in right of Sarah Holm, wife of said Christian W., and a disseizin by the tenant. The title claimed for the wife was that of a devisee under the will of William C. Hookway, who, in 1813, died seized of the demanded premises, and of other real estate. Said will, after directing payment of the testator's debts, &c. contained this clause : " And as to the rest and residue of my estate, I dispose of the same as follows ; viz. to my wife, Lydia Hookway, I give and bequeath all my household furniture, and the income, rents and profits of all my other estate, whether real, personal or mixed, during the minority of my children, provided she continues single and my widow, and does not marry again ; and on no other condition : But if she shall again marry, then, in lieu of the income of my estate bequeathed as aforesaid, she shall have, and I do hereby order my executors to pay her annually, from the income of my said estate, the sum of $ 100, during her natural life ; provided also, that she shall and does accept the same in lieu of all dower in my said estate. And I do further will and order, that as my children arrive to lawful age, or become twenty-one years of age, they each receive from the income of my estate aforesaid the sum of $ 100 annually, to be paid to them by my executors hereinafter named, if the said income of my estate will admit thereof without injuring my wife or such children as may yet be minors ; which I leave to

be judged of and determined at the discretion of my executors aforesaid.

" It is to be understood, that during the time my wife enjoys the whole income of my said estate, she support and educate my children out of said income ; and further, that if by intermarriage she shall vacate her claim to the whole of said income, and become entitled, in lieu thereof, to an annuity of $ 100 for life, as hereinbefore provided, then the residue of the income of my said estate, during the minority of my children, shall be appropriated to their support and education, as my executors shall direct.

" And I do further will and order, that upon the death of my wife, and all my children or the survivors of them attaining the age of twenty-one years, or the heirs of such of them as may decease, leaving issue, all my said estate be divided between my said children and their heirs, agreeably to the laws of this Commonwealth respecting the division of the estates of persons dying intestate. And I do further will and order, that if, after the death of my wife, my children shall die without issue, then all my estate of every description, real, personal and mixed, shall descend to and be equally divided between my nephews, viz. John C. Ashley, the son of my sister Sarah Frothingham, and William Collins Hookway Downing, the son of my sister Ann Downing, to hold the same to them and their heirs and assigns forever."

The aforesaid will was duly proved and allowed, on the 18th of October 1813. The executors therein named declined the trust, and letters of administration, with the will annexed, were duly issued. Lydia Hookway, wife of said testator, survived her husband, and remained unmarried during the remainder of her life. Two minor children of the testator also survived him, and were his sole heirs at law ; viz. William C. Hookway and Eliza C. Hookway, afterwards wife of Joel Holden. Lydia, the widow, on the 22d of November 1813, filed in the probate court a claim of dower in her husband's real estate, and renounced the legacies given her by his will ; and on the 13th of December next following, the premises, of which the demand

ants claim one fourth in this suit, were assigned to her as her dower, which she accepted, and occupied the same during her life.

On the 25th of November 1818, the children of said testator, viz. William C. Hookway, and Eliza C. Holden and her husband, Joel Holden, by deed of partition, divided all the real estate of the testator, except that which was set off to the widow as her dower. William C., the testator's son, conveyed all his interest in one undivided half of the land, which was set off as dower, and of which one fourth is demanded in this suit, to Eli Taylor, by deed of warranty, dated January 16th 1822 ; and said Taylor conveyed the same to said Low, the tenant, by deed dated October 24th 1826. Said deed to Taylor was made while the testator's widow was alive, but after his said two children, William C. and Eliza C. had reached the age of twenty-one years. Said William C., the son of the testator, died in 1830, and his only issue, living at his death, were two children, of whom the demandant, Sarah Holm, is one. Said Eliza C. Holden, the daughter of the testator, died in 1831, leaving issue now living. Lydia Hookway, widow of the testator, died in 1837.

The personal property of said testator was inventoried at $ 164·60, and his real estate at $ 5070. On the 23d of April 1835, the administrator, of said Eliza C. Holden, who was also the administrator, with the will annexed, of the estate of said testator, sold a part of the estate conveyed to Mrs. Holden by the aforementioned deed of partition, under a license from the probate court.

It was agreed by the parties, that judgment should be rendered for the demandants, or for the tenant, according to the opinion of the court on the foregoing facts.

*Fletcher & Sewall*, for the demandants. It was the intention of the testator to give the estate to such of his children as should be alive at the death of his wife, upon their attaining majority, and to the issue, if any, of his children then deceased. This was a contingent estate, as the persons who were to take could not be ascertained until the wife's death. Fearne, (7th ed.) 8.

2 Preston's Abstracts, 111.  *Ellis* v. *Essex M. Bridge,* 2 Pick. 243.  *Bowers* v. *Porter,* 4 Pick. 198.  *White* v. *Woodberry,* 9 Pick. 136.  *Olney* v. *Hull,* 21 Pick. 311.

The widow, by the will, had an estate during the minority of the children, terminable on her marriage, and on condition that she should take it in lieu of dower.  It was an estate for years, and not a vested freehold.  Nor was a vested freehold given to the executors.  If they took any estate in the land, it was a contingent one, because the estate given to the widow might cease before their estate could commence.  Fearne, 3.  See also *Manning's case,* 8 Co. 95.  *Bamfield* v. *Popham,* 1 P. W. 54.  *Kenrick* v. *Lord Beauclerck,* 3 Bos. & Pul. 175.  *Colmore* v. *Tyndall,* 2 Younge & Jerv. 605.  Her estate might cease by her death, before the children came of age, or might be defeated (as it was) by her refusing to accept it in lieu of dower.  There was, therefore, no estate in the widow which would support a contingent freehold remainder to the executors ; a vested freehold being required for the support of such a remainder.  Fearne, 281.  4 Kent Com. (3d ed.) 236.  If then the executors took a freehold by the will, it was as an executory devise, which does not require a vested freehold to support it.  Fearne, 386, 418.  The estate, limited over upon the death of the widow, must, for the same reason, be an executory devise ; there being, by the will, no vested freehold to support it.  Fearne, 281, 503.

The executors took by way of executory devise, by necessary implication.  They could not pay the children's annuities, unless they had the income ; and a devise of the income passes the estate.  *Reed* v. *Reed,* 9 Mass. 372.  *Walker* v. *Whiting,* 23 Pick. 313.

The widow's rejection of the provision for her in the will, which was made during the minority of the children, and before any estate could vest in the executors, did not defeat the subsequent limitations, which were then executory devises.

*Greenleaf & Whiting,* for the tenant.  The will may be considered as defeated and rendered void by the refusal of the widow to accept the devise made to her and by taking

her dower, and by the refusal of the executors to accept their trusts ; because not a single provision of the will could afterwards take effect conformably to the intentions of the testator. Those intentions would be most nearly reached and effected by the statute of descents and distributions. And so have all persons who, at his decease, had or could have any interest in the matter, ever since regarded and treated it.

But if this view of the case is not adopted, and the will is to be applied to the state of facts for which it has made no provision, then the tenant submits the following views as to its construction :

A will is never to be understood to create a contingent interest, unless such appears clearly to have been the testator's intention. *Doe* v. *Maxcy*, 12 East, 604. *Bowers* v. *Porter*, 4 Pick. 211. Nor will a devise over ever be taken to be an executory devise, if it can take effect as a remainder, either vested or contingent. *Tenny* v. *Agar*, 12 East, 261. *Haines* v. *Witmer*, 2 Yeates, 408. *Wilkes* v. *Lion*, 2 Cow. 334. Fearne, (3d Amer. ed.) 386. Where estates pass by devise, the devise is construed, if possible, 1st, as a vested interest ; but if that is impossible, then 2d, as a contingent remainder : And where no other construction is admissible, then 3d, as an executory devise.

I. The tenant submits that the estate was devised to the wife for life. It was given to her during widowhood ; which, being *tempus indeterminatum,* is an estate for life. Co. Lit. 42 *a*. It was defeasible, 1st, by marriage ; 2d, by the arrival of either of the children at full age : But as neither of these events might happen, it was still an estate for life. It was also *on condition* of her supporting and educating the children. *Crickmere* v *Paterson*, Cro. Eliz. 146. *Boraston's case*, 3 Co. 19, 21 *Wheeler* v. *Walker*, 2 Connect. 196. If this were all, there would be nothing to prevent the vesting of the remainder in the children, or rather a *descent*, (for such it is) to them, as heirs at law, subject to the widow's life estate. The testator's meaning was, that she should have the estate for life, and that they should have the rest of it. *Olney* v. *Hull*, 21 Pick. 314. *Doe* v.

*Maxcy,* 12 East, 604.   Had the widow died immediately after the testator, the children would have been instantly entitled to take, either at law, or as *cestuis que trust.*   The words, " upon the death of my wife," *in a will,* mean " upon the determination of her estate in the premises."   The intent of the testator was, first, to provide for his wife ; secondly, for his children ; and that they should take the estate whenever it should cease to be applicable to her use.   If such was not his intent, then this absurdity follows, that if she had married, and lived to extreme age, yet the children could receive only $ 100 per annum, until her death, however large the income might be.

The ultimate devise to children and *their heirs,* (i. e. *their issue,* 2 Pick. 243,) relates only to the time of division, merely directing that when they should all be of age, and not till then, the estate should be divided.   It is not an executory devise to grandchildren, if all his children are not living and of age at their mother's decease :   For, 1st, the children, being heirs, are not to be disinherited without express words ; and 2d, there are neither express words, nor necessary implication, to that effect. The testator does not say, *to children then living.*   If his words be taken literally, all the " heirs " must be of age, before they can take any estate ; and so, none might ever take.   To avoid this, the words should be transposed thus :   " And I do further will and order, that upon the death of my wife, and [upon] all my children or the survivors of them attaining the age of 21 years, all my said estate be divided between my said children or the heirs [issue] of such of them as may decease leaving issue, &c. according to the laws of this Commonwealth," &c.   There are authorities which warrant such a transposition.   1 Jarman on Wills, 437, 441.   *Marshall* v. *Hopkins,* 15 East, 309.   *Doe* v. *Gallini,* 5 Barn. & Adolph. 621.   The same result follows, though no transposition be made, by construing the words of apparent limitation or contingency, as merely marking the time when the devise shall take effect in possession — the interest vesting *instanter.*   *Blamire* v. *Geldart,* 16 Ves. 314.   1 Jarman on Wills, 735 — 739, 744.

II.  Upon the determination of the wife's life estate, by her

marriage, or by the oldest child's coming of age, the legal estate was, by the will, to pass to the executors, by implication, in trust ; the purposes of the trust being, 1st, to pay such child $ 100 a year, out of the income, if, in their judgment, it would admit thereof ; 2d, to pay the widow $ 100 a year ; 3d, to support and educate the children under age ; and 4th, to surrender the possession to the children on the majority of the youngest — unless it should be held that the trust must continue during the life of the widow, in order to pay her annuity.  To all which, it was indispensably necessary that the executors should have the income ; and a devise of the income is a devise of the estate itself.  2 Saund. 11, *note* (17).   *Trent* v. *Hanning*, 7 East, 99.   *Doe* v. *Willan*, 2 Barn. & Ald. 84.    18 Amer. Jurist, 6 – 8, and cases cited to this point by the demandants' counsel.   See other cases of devises in trust, by implication, by devise of rents, &c.  Cruise's Digest, Tit. 12, *c.* 1, §§ 17, 18. Fletcher on Estates of Trustees, 4, 5.   5 Mod. 64, per Ruke by, J.   Mo. 754, per Popham, J.   The estate thus devised in trust, being of uncertain duration, was an estate of freehold for life.   But there was nothing, in this trust to the executors, inconsistent with the vesting of the remainder in the children (or its descent to them) subject to the trusts.   *Doe* v. *Lea*, 3 T. R. 41.   *Steel* v. *Cook*, 1 Met. 281.

It is therefore submitted, that the two children of the testator took a vested remainder in fee.

III. But if it was not a vested remainder, it was a contin gent one, viz. to children living at the wife's decease ; and being so, it was defeated by the destruction of the particular estates. 1st.  The wife's particular estate was destroyed by her express waiver and refusal to take it ; any act of dissent being sufficient for this purpose.   Shep. Touch. (by Preston) 285.   3 Barn. & Ald. 38, per Holroyd, J.   *Wells* v. *Prince*, 9 Mass. 508. 2d.  The trust estate to the executors was also refused by them, expressly, and by the administrator with the will annexed, impliedly, by his suffering the children to enter and divide ; by selling part of the estate in fee, under license of court, as the separate estate of the female demandant's aunt, and by never acting as

trustee. But, even if the trusts had been accepted, yet if they were not for life, they ceased on the coming of age of the children, who then took by descent, subject to the mother's annuity. Cruise's Digest, Tit. 38, *c.* 8, §§ 1 – 14.

IV. But if it was an executory devise, yet the inheritance in the mean time descended on the heirs, who held it, subject only to the widow's dower, in trust for the devisees. *Rogers* v. *Ross*, 4 Johns. Ch. 388. 1 Preston on Estates, 241, 242. The estate was held, and treated by all parties, as an estate by descent; the will being considered as entirely defeated. One of the heirs, being thus in possession, as by descent, sold the demanded premises to the tenant, who was an innocent purchaser, *bonâ fide*, for a valuable consideration, without notice. He is therefore entitled to hold the premises discharged of the trust; and the demandants' remedy, if any, is against the estate of the heir — who is their father. Besides; if the female demandant takes the estate, she takes by descent; it being the same estate which the law of descents would give her. 2 Bl. Com. 242. And she takes, too, by descent from her father; in which case, the estate would be assets in her hands to satisfy the tenant's claim on the covenants in her father's deed. To avoid this circuity of action, the law will not permit her to recover in this suit.

*Fletcher*, in reply. If the estate given by the will, after the widow's death, was an executory devise, as we insist that it has been shown to have been; then no act, neglect or misapprehension of right, by her, or the executors, or the children, could defeat it. The will must be carried into effect, however greatly the administrator with the will annexed may have erred in construing it

The widow could not take a life estate under the will, because the income was expressly given to her, only " during the minority " of the children, which is necessarily an estate for years, and not a freehold; though like any other estate for years, it was not impossible, at its inception, that it might continue during the life of the party.

The opinion of the court was given, March 13th 1843

WILDE, J.   This case depends on the construction of the last will of William C. Hookway, which is not very clearly expressed.   The intention of the testator, however, we think may be ascertained with reasonable certainty.   In the first place, he gives and bequeaths to his wife, Lydia, the income, rents and profits of all his estate, real and personal, during the minority of his children, provided she should continue his widow ; and in case of her marriage again, his executors are directed to pay her annually, from the income of his estate, the sum of $ 100 during her natural life.   And the executors are further directed to pay to each of his children, as they arrive to the age of twenty-one years, the like sum of $ 100, if the income of his estate should admit thereof without injuring his wife or such children as might be minors ; which he left to be judged of and determined at the discretion of his executors.   And he further directs, that while his wife should enjoy the whole income of his estate, she should support and educate his children out of that income ; and if by intermarriage she should vacate her claim to the whole of said income, that then the residue of said income should be appropriated, during the minority of his children, to their support and education, as his executors should direct.

Then follows the clause under which each party claims title to the demanded premises :   " And I do further will and order, that upon the death of my wife, and all my children or the survivors of them attaining the age of twenty-one years, or the heirs of such of them as may decease, leaving issue, all my said estate be divided between my said children and their heirs, agreeably to the laws of this Commonwealth respecting the division of the estates of persons dying intestate."

By this clause, the demandants' counsel contend that the estate was devised to such of the testator's children as should be living at the death of his wife, upon their attaining the age of twenty-one years, and to the issue of such of them as should have deceased, leaving issue ; and that this was a contingent estate, which could not vest until the death of the testator's widow.

On the other hand, the tenant's counsel insist that a life es-

tate was given to the testator's widow, and a vested remainder to his children : That this remainder vested in interest on the death of the testator, although it did not vest in possession until the death of the widow. If the will can be so construed, then undoubtedly the conveyance of William C. Hookway, son of the testator, and father of Sarah, the demandant, of his share of the remainder to Taylor, from whom the tenant derives his title, was a valid conveyance, according to the doctrine laid down in *Whitney* v. *Whitney*, 14 Mass. 88, and the authorities there cited.

But we are of opinion that the will cannot be so construed. It is argued, that the estate was given to the wife *during her widowhood;* which, being *tempus indeterminatum,* is an estate for life. This however is not the language nor the meaning of the will. The income of the estate is given to the wife, in express terms, during the minority of the children ; and the executors are to pay to each of them, as they arrive at the age of twenty-one years, the sum of $100, out of the income. So that we think it manifest, whatever doubts there may be as to other parts of the will, that the estate devised to the wife was an estate for years, which never took effect ; she having refused to take it, and having claimed her dower in the real estate. And if she had not so refused, she would not have been entitled to the income after the children should arrive at the age of twenty-one years ; for then the executors were to have the control of the income to pay the annuities given to the children, if the income would admit thereof without injuring the widow and such children as might be minors ; of which the executors were to judge according to their discretion. The executors then took the estate by implication, and of necessity, in order to enable them to execute the will.

We are also of opinion, that whether the widow took an estate for years, or an estate for life, the remainder to the children did not vest in them on the death of the testator. The rule laid down by Fearne, on this abstruse branch of the law, is applicable to the present case, and is supported by other authorities. " Wherever," he says, " the preceding estate is limited so as

to determine on an event which certainly must happen ; and the remainder is so limited to a person *in esse*, and *ascertained*, that the preceding estate may, by any means, determine before the expiration of the estate limited in remainder ; such remainder is vested. On the contrary, wherever the preceding estate is limited to a person not *in esse*, or *not ascertained* ; then the remainder is contingent." Fearne, (7th ed.) 217.

Thus if an estate be limited to two for life, remainder to the survivor of them in fee, the remainder is contingent, for it is uncertain who will be the survivor. Fearne, 9. *Biggot* v. *Smyth*, Cro. Car. 102. The case of *Olney* v. *Hull*, 21 Pick. 311, was decided on this principle. In that case, the devise was to the testator's wife as long as she remained his widow ; and should his wife die or marry, then the land to be divided equally among his surviving sons. And it was held that the remainder, given to the sons, was contingent until the marriage or death of his widow. The same principle applies, we think, in the present case. The remainder is not given to the children generally, but to the survivors of them, living at the death of the testator's wife, on their arrival at the age of twenty-one years, and the issue of such as had before died ; and if all his children should die without issue, then the estate was to be divided between the testator's two nephews named in the will. The persons, therefore, who were to take the remainder, were *not ascertained*, and could not be, until the death of the widow ; and the remainder, according to the well established principle of law laid down by Fearne, was contingent, and could not vest in interest or possession, before that event.

It was suggested by the tenant's counsel, that the testator's children might take a reversion, as heirs at law. But this cannot be admitted, as there was a devise over to the testator's nephews. Nor could the widow and children repudiate and renounce the will, to the prejudice of the grandchildren, or nephews, unless the devise to them was a contingent remainder, and that was defeated and destroyed by the failure or destruction of the particular estate.

We are then to consider whether the devise to the children

surviving the widow was a contingent remainder ; and if **so,** whether it was destroyed by the failure of the particular estate on which it depended.

It was contended that an estate of freehold vested in the executors, by implication. But the implied devise to them could not take effect as a contingent remainder, because there was no estate of freehold to support it. And it could not take effect as a vested remainder, because the estate limited to the widow might cease by her death, or by her refusing to relinquish her right of dower, before the children came of age, when the implied devise to the executors was to have commenced. This implied devise, therefore, by the rules of law, could take effect only as an executory devise. Fearne, 3.

But it has been argued that the implied devise to the executors vested in them when the children came of age ; and that thus vesting, it would change the subsequent limitation, upon the death of the widow, from an executory devise to a contingent remainder ; and that this contingent remainder would be defeated by the destruction of the vested freehold estate on which it depended. We are, however, of opinion, that if such a freehold estate would have vested in the executors, it was not defeated by the executor's refusal to accept the trust ; for the same estate would have vested in the administrator with the will annexed : So that nothing appears in the case to show that if any such estate ever vested, it has been defeated by any act of the executors, or of the administrator with the will annexed. But we think that no estate ever vested in the executors ; for they renounced their trust, as is admitted, before either of the children came of full age ; and the widow never married. And as to the land assigned to the widow as her dower, which includes the demanded premises, no estate ever did or could vest in the administrator with the will annexed, for he was never entitled to the income ; nor would the executors have been so entitled, if they had accepted the trust. So that the ground of an implied devise, as to this part of the estate, was removed before it could by possibility vest in possession. The implied devise to the executors, and the subsequent limitations, were

executory devises in their creation, and no event has since taken place by which any or either of them became contingent remainders.    But if it were otherwise, it would not avail the tenant, as nothing appears to show that the implied devise to the executors has ever been defeated.

The result is, that no estate ever vested in Hookway, the son, either in possession or in interest; but the whole estate first vested, on the death of the widow, in the testator's grandchildren, of whom the demandant, Sarah Holm, is one.

*Judgment for the demandants.*